United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE M. SMITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____/ | No. C-14-1413 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 14, 17)** |

　　　Plaintiff Anne Smith seeks review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. Ms. Smith has exhausted her administrative remedies with respect to her claim of disability. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Ms. Smith seeks an order reversing the agency decision and remanding for payment of benefits. Defendant Carolyn W. Colvin, in her capacity as Commissioner of the Social Security Administration ("SSA"), opposes the motion and cross-moves for summary judgment.

　　　Having considered the parties' briefs and the administrative record, the Court hereby **GRANTS** Ms. Smith's motion and **DENIES** the SSA's. The Court further remands to the SSA for further proceedings consistent with this opinion.

## I.　FACTUAL & PROCEDURAL BACKGROUND

　　　On February 10, 2011, Ms. Smith filed a Title II application for disability insurance benefits, alleging bipolar disorder. A few weeks later, Ms. Smith filed a Title XVI application for

supplemental security income. In both applications, Ms. Smith stated that her disability began on July 1, 2009. *See* AR 172-81 (application for supplemental security income benefits); AR 185-86 (application for disability insurance benefits). Ms. Smith's applications were initially denied on June 30, 2011, and upon reconsideration on March 30, 2012. *See* AR 112 (initial denial notice); AR 122 (reconsideration denial notice). Ms. Smith then filed a written request for a hearing before an administrative law judge ("ALJ"). *See* AR 128 (request for ALJ hearing).

A hearing was held before ALJ David R. Mazzi on January 11, 2013. *See* AR 35 (ALJ hearing transcript). Ms. Smith appeared and testified at the hearing, as did her mother, Diane Wood. *See* AR 35-6 (ALJ hearing transcript). At the hearing, Ms. Smith requested the onset date of her disability be amended to September 18, 2009, which is the alleged date she was clean and sober from methamphetamine. *See* AR 38 (ALJ hearing transcript); AR 272 (pre-hearing request to amend onset date).

On April 18, 2013, ALJ Mazzi issued an unfavorable decision, finding Ms. Smith was not disabled under the Social Security Act from July 1, 2009, through the date of decision. *See* AR 19-20 (ALJ decision). The ALJ evaluated Ms. Smith's disability claim using the five-step sequential disability evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and found in relevant part as follows:

(1) at step one, that Ms. Smith had not engaged in substantial gainful activity ("SGA") since July 1, 2009, the original alleged onset date of disability;

(2) at step two, that Ms. Smith suffers from an affective disorder that does qualify as a severe impairment;

(3) at step three, that Ms. Smith's mental impairments, considered singularly and collectively, do not qualify under the Listing of Impairments;

(4) at step four, that Ms. Smith was not credible and that certain treating and examining doctors' opinions were entitled to only partial weight, thus resulting in a finding that Ms. Smith had a residual functional capacity ("RFC") to perform "at least simple, repetitive tasks equating to unskilled work with limited public interaction"; and

2

(5) at step five, that Ms. Smith could not perform any past relevant work but was capable of performing other jobs existing in significant numbers in the national economy.

*See* AR 21-29 (ALJ decision).

On January 30, 2014, the Appeals Council denied Ms. Smith's request for review. *See* AR 1-6 (Appeals Council denial). On March 26, 2014, this petition ensued.

## II. DISCUSSION

### A. Legal Standard

The district court may disturb the final decision of the Administration "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir.1993). Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review must "consider the record as a whole," both that which supports as well as that which detracts from the Secretary's conclusion. *Desrosiers v. Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

In the instant case, Ms. Smith contends that the ALJ erred in three ways, which necessitates a remand for benefits. More specifically, she asserts that the ALJ erred in rejecting (1) her credibility; (2) the opinions of her treating and examining physicians; and (3) the testimony of her mother, Ms. Wood.

### B. Ms. Smith's Credibility

In determining Ms. Smith's RFC, the ALJ found that Ms. Smith was only partially credible. AR 25 (ALJ decision) (stating that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are found not credible to the extent inconsistent with the residual functional capacity"). Ms. Smith challenges this credibility determination.

To determine whether a claimant's excess pain testimony is credible, the ALJ performs a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ "must consider whether there is underlying medically determinable physical or mental impairments that could reasonably be expected to produce the individual's pain or other symptoms." *See* SSR 96-7p. The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Thus, "the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." *Id*; *see also Robbins v. Social Security Administration*, 466 F.3d 880, 884 (9th Cir. 2006).

Second, once an underlying impairment has been shown, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *see also Robbins*, 466 F.3d at 883 (stating that, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each"). The clear and convincing standard is not an easy requirement to meet; this standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002); *see also Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

In the instant case, the ALJ found that Ms. Smith had satisfied the first step. But at step two, the ALJ determined that Ms. Smith's credibility was questionable for the following reasons:

> Regardless of the alleged help she receives from her mother or husband, she engages in activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The claimant is apparently able to care for young children at home, albeit with some assistance. Even considering her sporadic lack of medical insurance, she has not generally received the type of medical treatment one would expect for a disabled individual. Review of the claimant's work history and earnings report shows that she worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. Another factor influencing the conclusions reached in this decision is the claimant's

generally unpersuasive appearance and demeanor while testifying at the hearing.

AR 28 (ALJ decision).

Although the ALJ provided specific reasons for rejecting Ms. Smith's credibility, he failed to provide clear and convincing ones – even when the Court considers the reasons collectively. For example, the ALJ rejected Ms. Smith's credibility because of her activities of daily living, *i.e.*, she was able to take care of her children at home "albeit with some assistance." AR 28 (ALJ decision). But the ALJ seems to have given short shrift to the fact that Ms. Smith's mental impairment is cyclical or "episodic in nature and[, as a result, she] has good days and bad days," *Witt v. Colvin*, No. 3:13-CV-01550-SI, 2014 U.S. Dist. LEXIS 166755, at *18 (D. Or. Dec. 1, 2014). Moreover, even her bad days appear to vary in terms of her ability to function. *See, e.g.*, AR 40, 42, 46-47 (ALJ hearing transcript) (testimony by Ms. Smith that, on good days, she can "function like everyone else," but on bad days when she is depressed, "[t]ime just runs into each other" and she relies on her mother, husband, or even her oldest daughter to take care of things while she just stays in bed or sits on the couch watching television because she has no energy to even get up); *see also* AR 51-54 (ALJ hearing transcript) (testimony by Ms. Woods that her daughter "does have days when she's able to do all that" and she has days when she is not; that Ms. Smith "sometimes . . . doesn't want to get out of bed to do anything"; and that when Ms. Smith is in a down cycle, "[w]e share that responsibility [of taking the kids to and from school], depending on how severe the down cycle is").[1] Thus, what Ms. Smith can and cannot do – including take care of her children – must be assessed based on whether she is having a good or a bad day and, if the latter, how bad that day can be. *See Witt*, 2014 U.S. Dist. LEXIS 166755, at *18 (concluding that "[t]he ALJ erred in not considering this fact [*i.e.*, that the claimant's bipolar disorder was episodic in nature] and

---

[1] On bad days when Ms. Smith is manic, she has other problems. For example, Ms. Smith testified at the hearing before the ALJ that "I tried to take a volunteer spot once for a very short term in my daughter's sports team because I thought maybe I could work on those skills just an hour or two a week, and I couldn't" because "I'd do really well, and then all of a sudden I would have a meeting that came on a day I was manic and I just, I was off doing something else and I didn't even know it existed." AR 45-46 (ALJ hearing transcript).

1  discrediting Plaintiff's credibility based on his daily activities").[2]  For example, in a functional repot,
2  Ms. Smith stated that she goes outside "[e]veryday to drive kids to [and] from school [and] sports.
3  Little more."  AR 232 (SSA functional report).  Her mother, in a third party functional report,
4  similarly stated that Ms. Smith "[t]ake[s] kids to and from school and other activities, cooks inner
5  for kids and husband."  But Ms. Wood also stated: "Her husband helps with kids extensively as do I
6  help with her kids."  AR 241 (SSA third party functional report).  Furthermore, during the ALJ
7  hearing, Ms. Smith testified that, when she is having her down times, "[t]ime just runs into each
8  other.  *I rely on my mom very heavily to take my kids to and from school [if] need be*, or help me out
9  in the evenings.  I rely on my mom and my husband, or even my oldest daughter to do stuff."  AR 42
10 (ALJ hearing) (emphasis added).

11      Also problematic is the ALJ's rationale that "[e]ven considering her sporadic lack of medical
12 insurance, she has not generally received the type of medical treatment one would expect for a
13 disabled individual."  AR 28 (ALJ decision).  As a preliminary matter, this appears to be inaccurate:
14 between September 18, 2009 (the alleged disability onset date) and February 11, 2013
15 (approximately two months before the ALJ issued his decision), Ms. Smith saw a doctor more than
16 30 times, often for treatment of her mental impairment.  It is not clear from the ALJ's decision why
17 this level of treatment for her mental impairment was inadequate.  AR 28 (ALJ decision).  Moreover,
18 for at least part of the relevant period, Ms. Smith was not seeking care from a mental health
19 specialist because her health insurance did not cover such treatment.  *See* AR 39 (ALJ hearing
20 transcript).  Ms. Smith's credibility cannot be impugned simply because she cannot afford specific
21 medical treatment.  *Cf. Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that claimant's

---

[2] Because of this "cycling," it is not clear that Ms. Smith would necessarily be able to work. *see, e.g.*, AR 45-46 (ALJ hearing); *see also* AR 523 (Dr. Clarke's medical source statement) (stating that Ms. Smith cycles "2-4 times a month for 2-5 days"); *cf. Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (rejecting ALJ's conclusion that claimant's activities indicated an ability to work because "[h]er activities were sporadic and punctuated with rest"); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (stating that "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer").

"failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding"); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (stating that "a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment").

The ALJ's remaining reasons for the adverse credibility determination – *i.e.*, Ms. Smith's sporadic work prior to the alleged disability onset date and Ms. Smith's demeanor at the hearing – are also insufficient to meet the clear and convincing standard, at least on their own. As to the issue of sporadic work, the ALJ noted that "review of [Ms. Smith's] work history and earnings report shows that she worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." AR 28 (ALJ's opinion). However, the ALJ failed to take into account that the record suggests other plausible reasons for Ms. Smith's sporadic work, including (1) Ms. Smith's prior drug abuse (which precluded her from alleging an earlier disability onset date), (2) her attendance at Sacramento State University, and/or (3) her taking care of her three children. As for the ALJ's reference to Ms. Smith's "generally unpersuasive appearance and demeanor" while testifying at the hearing, AR 28 (ALJ decision), the Court acknowledges that an ALJ may "use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But it is questionable whether unpersuasive appearance and demeanor at a hearing is sufficient on its own as a basis for rejecting a claimant's testimony. Certainly, the government has not cited to any authority to that effect. Moreover, as noted above, a claimant's credibility can be rejected only for clear and convincing reasons, *see Lingenfelter*, 504 F.3d at 1036, and the guidance provided by Social Security Rule 96-7p confirms that this is a demanding standard, directing an ALJ to consider multiple factors in assessing a claimant's credibility, such as the individual's daily activities and the treatment the individual receives or has received. *See* SSR 96-7p.[3]  Nothing in

---

[3] To the extent the ALJ suggested that Ms. Smith's appearance or demeanor was not consistent with her claim of mental impairment, this reasoning is also insufficient, on its own, to make an adverse credibility determination. *See Orn,* 495 F.3d at 639 (9th Cir. 2007) (stating that an ALJ's observations of a claimant's functioning during a hearing "may not form the sole basis for discrediting a person's testimony"); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (stating that "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at the

SSR 96-7p allows the ALJ to reject the claimant's credibility based solely on appearance and demeanor at the hearing.

Accordingly, the Court finds that the ALJ erred by failing to provide clear and convincing reasons for rejecting Ms. Smith's credibility.

C.     Doctors' Opinions

Next, Ms. Smith contends that the ALJ erred with respect to his evaluation of various doctors, more specifically, Drs. Cain, Auluck, and Clarke. According to Ms. Smith, the ALJ failed to properly credit the opinions of these doctors.

1.     Dr. Cain and Dr. Auluck

Dr. Cain, a psychologist, and Dr. Auluck, a psychiatrist, are both examining physicians. They diagnosed Ms. Smith with bipolar disorder and concluded that as a result, she had functional limitations, such as difficulty with attendance and social interaction. *See* AR 428 (Dr. Cain's report); AR 532 (Dr. Auluck's report). Dr. Cain concluded Ms. Smith might have difficulty with attendance and responding appropriately to co-workers, supervisors, and the public because of her moderate to severe depression. AR 27. Dr. Auluck concluded that because of her mood swings, Ms. Smith's ability to maintain full-time work on a consistent basis was compromised. HR 28. The ALJ gave only partial weight to their opinions because they relied "too heavily on the subjective reports of symptoms" by Ms. Smith. *See* AR 27-28 (ALJ decision).

Under Ninth Circuit case law, an examining physician's uncontroverted opinion may only be rejected by providing clear and convincing reasons supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec. Admin.,* 528 F.3d 1194, 1198 (9th Cir. 2008). "'Even [where] contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific

---

hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible"); *Lewis v. Weinberger*, 541 F.2d 417, 421 (4th Cir. 1976) (stating that ALJ's observation that claimant did not appear to be in pain while testifying was entitled to little or no weight in a case of alleged psychological disability and, "standing alone, cannot be substantial evidence to support the Secretary's decision"); *see also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (stating that the ALJ's inclusion of personal observations – *e.g.*, no outward appearance of the claimant being in severe pain – was not improper; but pointing out that the ALJ's decision also included an evaluation of the claimant's testimony, the opinions of the examining and treating physicians, and objective medical evidence).

and legitimate reasons that are supported by substantial evidence in the record.'" *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012). For purposes of this opinion, the Court assumes that the opinions of Drs. Cain and Auluck were controverted. *See, e.g.*, AR 86 (state agency psychological consultant, opining that "[t]here is insufficient evidence to substantiate the presence of [an affective] disorder")[4]; AR 330-31 (Dr. Ward, a treating physician, opined that Ms. Smith did not have bipolar disorder, but also concluding that she did have an unspecified personality disorder and that her insight and judgment were impaired as a result). Even with this assumption, the Court finds the ALJ's evaluation of the examining physicians problematic.

The ALJ's main, indeed sole, criticism with respect to Dr. Cain and Dr. Auluck's opinions was that each "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. *Yet . . . there exist good reasons for questioning the reliability of the claimant's subjective complaints.*" AR 27 (ALJ decision) (emphasis added); *see also* AR 28 (ALJ decision). However, as discussed above, the ALJ failed to provide clear and convincing reasons for rejecting Ms. Smith's credibility, and therefore the ALJ's critique of the examining doctors' opinions based on her putative lack of credibility is likewise called into question.

Moreover, the ALJ's criticism is problematic for additional reasons. First, the ALJ appears not to have taken into account (at least not sufficiently) that objective testing is different where a mental, as opposed to a physical, impairment is at issue. Testing for mental disability is inherently imprecise. As noted by one court:

> Psychiatric impairments are not as readily amenable to substantiation by objective laboratory testing as are medical impairments and consequently, the diagnostic techniques employed in the field of psychiatry may be less tangible than those in the field of medicine. Mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.

---

[4] *But see Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1995) (noting that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician").

*Hartman v. Bower*, 636 F. Supp. 129, 131-32 (N.D. Cal. 1986).  For a mental impairment, objective testing may include a mental status examination consisting of the physician talking to and observing the claimant, as was the case here with Drs. Cain and Auluck.  *See* SSA, *Disability Evaluation Under Social Security, 1200 Mental Disorders – Adult*, available at http://http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited March 17, 2015) (noting that "[t]he mental status examination is performed in the course of a clinical interview and is often partly assessed while the history is being obtained"; also noting that psychological testing can include "questions designed to elicit a range of responses" and can "provide other useful data, such as the specialist's observations regarding your ability to sustain attention and concentration, relate appropriately to the specialist, and perform tasks independently (without prompts or reminders")); *cf. Lebus v. Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981) (stating that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique"); *Alvarez v. Califano*, 483 F. Supp. 1284, 1286 (E.D. Pa. 1980) (noting there is nothing in the claimant's record "to support the conclusion that [the doctor's] diagnosis of mental impairment did not comport with his observations[;] [t]here is certainly no contradictory medical evidence to suggest either that [the doctor] incorrectly evaluated plaintiff's mental state or that his methodology deviated from accepted medical practice" ).

Second, to the extent Drs. Cain and Auluck relied on the self-reporting of Ms. Smith, the Ninth Circuit has pointed out that

> mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's "subjective allegations" is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders.

*Ferrando v. Comm'r of SSA*, 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011); *see also Ryan*, 528 F.3d at 1199 (noting that, "unsurprisingly," the doctor recorded the symptoms relayed to him by the claimant, but he also "recorded several of his own clinical observations of [the claimant]" – *e.g.*, odd behavior and mannerisms, rapid speech, quick agitation, anger); *Leach v. Colvin*, No. 6:13-CV-

00426-BR, 2014 U.S. Dist. LEXIS 52126, at *22-23, 25 (D. Or. Apr. 15, 2014) (noting that even where mental status examinations were based in part on self-reporting by claimant, that was "not, in itself, a sufficient basis to reject Dr. Turner's opinion"); *Fritts v. Astrue*, No. C11-5800-MJP-JPD, 2012 U.S. Dist. LEXIS 118246, at *19-20 (W.D. Wash. July 20, 2012) (stating that "[t]o say that the Becks Depression Inventory and psychological tests can be disregarded because they involve the subjective statements of the Plaintiff goes too far"). Here, although the examining doctors did take into consideration Ms. Smith's self-reporting, their conclusions were also based on their own observations, as reflected in their reports. *See, e.g.*, AR 428 (Dr. Cain's report) (stating that Ms. Smith's "mood is moderately to significantly depressed"); AR 530 (Dr. Auluck's report) (stating that Ms. Smith's "mood was clearly labile and irritable; however, she was able to hold herself together and provide a fair account of her history"). Here, Dr. Cain and Dr. Auluck individually performed a psychological evaluation, consisting of a mental status examination. AR 427, AR 528.

The Court, therefore, concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Drs. Cain and Auluck. *See Lester,* 81 F.3d at 831 (noting that "[t]he opinions of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician").

2.   <u>Dr. Clarke</u>

While Drs. Cain and Auluck were examining physicians, Dr. Clarke was Ms. Smith's treating physician. Based on the record, it appears that Ms. Smith saw Dr. Clarke seven times between August 2009 and October 2012, for a variety of physical and mental reasons. *See* AR 404, 410, 412, 483, 492, 496, 511 (Kaiser medical records). In early 2013, Dr. Clarke submitted a medical source statement to support Ms. Smith's application for social security benefits. Within that statement, Dr. Clarke indicated that Ms. Smith had moderately severe or severe limitations with respect to, *e.g.*, attention, concentration, attendance, sustaining an ordinary routine, interaction with others, and the ability to complete a normal workday and workweek without interruptions arising from the mental impairment. *See, e.g.*, AR 520-21 (Dr. Clarke's medical source statement). In a

handwritten note, Dr. Clarke stated that her "comments are made based off of a cycle. Each cycle is 2-4 times a month for 2-5 days." AR 523 (Dr. Clarke's medical source statement).

In his decision, the ALJ gave Dr. Clarke

> [r]educed weight . . . for a variety of reasons. For one, her opinion is unsupported by objective evidence. Secondly, she is neither a psychiatrist or psychologist, or any type of mental health specialist. It is unclear how an individual described by Dr. Clarke is able to care for three children, even with the help of her mother and husband who both work. She failed to explain her assessment of June 2009 as the onset of these limitations. The claimant was apparently diagnosed with bipolar disorder when she was fifteen years old, and the record reveals that the claimant's allegedly disabling impairment of a bipolar disorder was present at approximately the same level of severity prior to the alleged onset date.

AR 27 (ALJ decision).

Similar to above, the Court assumes that Dr. Clarke's opinions are contradicted such that the ALJ could reject them if he provided specific and legitimate reasons supported by substantial evidence in the record. *See Ryan,* 528 F.3d at 1198.[5] But, as noted above, the Court concludes that the ALJ failed to meet this standard. For example, while Dr. Clarke's medical source statement did not cite to any objective evidence itself, the ALJ does not appear to have considered the underlying medical records of Dr. Clarke and the other medical professionals at Kaiser who treated Ms. Smith. *See generally* AR 401-21 (Kaiser medical records, including reference to Dr. Clarke); AR 477-518 (Kaiser medical records, including records of Dr. Clarke). These records indicate that, while Ms. Smith's visits to Kaiser at times were at times precipitated by a physical problem, there was a mental component as well. *See, e.g.*, AR 483 (medical record of Dr. Clarke) (noting that Ms. Smith hurt her arm after she got mad at her husband for laughing and tried to get out of a moving car at 40 mph). Indeed, one medical record specifically addressed Ms. Smith's complaint that her mental impairment medications were not working, *see* AR 492 (medical record of Dr. Clarke), which led Dr. Clarke to

---

[5] When a treating physician's opinion is controverted/contradicted by another treating or examining physician the deference standard is lowered from "clear and convincing" to "specific and legitimate reasons supported by substantial evidence in the record." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (An uncontroverted opinion may only be rejected by providing clear and convincing reasons supported by substantial evidence in the record); *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012) ("'Even [where] contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.'").

12

consult with another physician about how to address the problem.  *See* AR 496 (medical record of Dr. Clarke).

The ALJ discredited Dr. Clarke in part because she is not a mental health specialist, but the Ninth Circuit has expressly rejected such rationale so long as the treating physician treats the claimant for a mental impairment, which was the case here.[6]  *See Lester*, 81 F.3d at 833 (noting that the doctor "provided treatment for the claimant's psychiatric impairment, including the prescription of psychotropic medication" and therefore "[h]is opinion constitutes 'competent psychiatric evidence' and may not be discredited on the ground that he is not a board certified psychiatrist"); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (noting that not only was the doctor "permitted by state law and professional custom to practice psychiatry, by virtue of his treatment of [the claimant's] condition, including the prescription of psychotherapeutic drugs, he in fact was practicing psychiatry" and therefore "his evidence is medically acceptable").

Finally, the ALJ questioned why Dr. Clarke assessed an onset date of June 2009, but that may well have been based on the fact that Dr. Clarke, as a Kaiser doctor, had access to Kaiser medical records which went back to that date.  *See, e.g.*, AR 289 (Kaiser medical records).  If the ALJ had an issue regarding the onset date, he had a duty to develop the record further by asking Dr. Clarke for additional information; instead the ALJ simply discounted Dr. Clarke's opinion without making any inquiry.  *See DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir. 1991) (noting that "[t]he ALJ has a duty to develop the record . . . even when the claimant is represented by counsel"); *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) (stating that, "[i]f the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them").

---

[6] There is a social security regulation providing that "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5), but here Drs. Cain and Auluck were specialists who had opinions similar to those of Dr. Clarke.

13

3.   Summary

For the foregoing reasons, the Court concludes that the ALJ erred in giving only partial credit to the opinions of Drs. Cain, Auluck, and Clarke. To the extent the ALJ concluded that the opinions of these doctors were not supported by the record as a whole, that determination is not well founded, because that conclusion relies on the proper rejection of all three physicians' opinions in the first place.

D.   Lay Witness Testimony

Finally, Ms. Smith argues that the ALJ erred by not crediting the testimony of her mother, Ms. Wood. In his decision, the ALJ did discuss the testimony of Ms. Wood, *see* AR 25 (ALJ decision), but failed to give an express explanation as to why he rejected it (which he presumably did given his ultimate conclusion that Ms. Smith was not disabled). In its papers, the government contends that the ALJ's failure to explain why he rejected Ms. Wood's testimony was, at best, harmless error, particularly because the ALJ's reasons for rejecting Ms. Smith's testimony are equally applicable to the testimony of Ms. Wood. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (noting that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se"). Because, as discussed above, the ALJ failed to give clear and convincing reasons for rejecting the credibility of Ms. Smith, the government's argument lacks merit.

E.   Remedy

Having agreed with Ms. Smith that the ALJ erred in rejecting both her and her mother's testimony as well as the opinions of Drs. Cain, Auluck, and Clarke, the Court now turns to the issue of remedy. Ms. Smith asks this Court to remand for an award of benefits rather than for further proceedings.

In determining whether a remand for award of benefits is appropriate, this Court applies the credit-as-true standard established by the Ninth Circuit. Under this standard, in order for a court to

1  remand to an ALJ with instructions to calculate and award benefits, the following requirements must
2  be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[7]

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014).

In the instant case, the second factor has been met for the reasons stated above. However, the Court cannot say that the third factor has been satisfied, *i.e.*, that the ALJ would be required to find Ms. Smith disabled on remand if he were to credit as true the testimony of Ms. Smith and her mother and the opinions of Drs. Cain, Auluck, and Clarke. Assuming that the ALJ were to credit this evidence as true, he might well have to reassess the RFC for Ms. Smith.[8] But even with a re-assessed RFC (*e.g.*, one that took into account Ms. Smith's good days and bad days), it is not clear whether there might be jobs existing in significant numbers in the national economy that Ms. Smith could perform based on that RFC. Accordingly, the third factor has not been met. For that same reason, the Court cannot say that the first factor has been met either, *i.e.*, the Court cannot say that further administrative proceedings would serve no useful purpose.

///
///
///
///

---

[7] "This third requirement naturally incorporates what we have sometimes described as a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Garrison,* 759 F.3d at n. 26; *see also Smolen*, 80 F.3d at 1292.

[8] The Court acknowledges that one of Ms. Smith's treating physicians, Dr. Ward, concluded that Ms. Smith did not have bipolar disorder. However, Dr. Ward still diagnosed Ms. Smith with having mood and personality disorders and further found Ms. Smith's insight and judgment to be impaired as a result. *See* AR 328-32 (Dr. Ward's opinion). Admittedly, Dr. Ward did not indicate to what extent Ms. Smith's insight and judgment was impaired, but the ALJ did not follow up on this issue with Dr. Ward.

### III. CONCLUSION

For the foregoing reasons, the Court grants Ms. Smith's motion for summary judgment and denies the government's cross-motion. The Court remands to the agency for further proceedings consistent with this opinion.

The Clerk of the Court shall enter judgment and close the file in this case.

This order disposes of Docket Nos. 14 and 17.

IT IS SO ORDERED.

Dated: April 21, 2015

_____
EDWARD M. CHEN
United States District Judge